IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MILO VAREEN DAVIS,<br><br>    Defendant. | No. CR10-0041<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . 2

III.  ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . 3

IV.  RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . 3

V.    DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.    *Is Defendant's Motion Timely?*. . . . . . . . . . . . . . . . . . 5
     B.    *Does Destruction of the Recording Constitute a "Due
         Process Violation" Requiring Suppression of the Evidence?*. . . . . . . . 9

VI.  SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . 12

VII. RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

On the 3rd day of May 2011, this matter came on for hearing on the Motion to Suppress (docket number 55) filed by the Defendant on April 25, 2011. The Government was represented by Special Assistant United States Attorney Anthony Russell Morfitt and Assistant United States Attorney Patrick L. Reinert. Defendant Milo Vareen Davis

appeared in person and was represented by his attorneys, Clemens Erdahl and David Alan Cmelik.

## II. PROCEDURAL HISTORY

On May 21, 2010, Defendant Milo Vareen Davis was charged by Indictment with conspiracy to distribute crack cocaine (Count 1) and money laundering (Count 2). At that time, Defendant was in prison in Arizona. Defendant was subsequently returned to the Northern District of Iowa pursuant to a writ of habeas corpus ad prosequendum.

Defendant initially appeared and was arraigned in the Northern District of Iowa on October 19, 2010. Defendant was represented at that time by attorney James B. Clements. Trial was scheduled for December 20, 2010.

On November 17, 2010, attorney Raphael M. Scheetz appeared on Defendant's behalf. Five days later, Mr. Scheetz filed a motion to continue, noting his recent appearance and noting that the indictment alleges a conspiracy over a 10-year period, from 1997 to 2006. According to the motion, the discovery file is "voluminous." The Government had no objection to the motion, and the trial was continued to March 21, 2011.

On March 1, 2011, Mr. Scheetz filed a motion to withdraw as counsel, stating that he had an "actual conflict of interest" as a result of the Government adding a "cooperating witness" in this case. The Court found that the motion to withdraw should be granted. In addition, because of the proximity to trial, the Court continued the trial to April 25, 2011.

On March 29, 2011, attorney Clemens Erdahl appeared on Defendant's behalf. Citing his recent appearance, Mr. Erdahl filed a motion to continue on April 4, 2011. The motion was denied because counsel for the Government had not been consulted.

On April 5, 2011, the grand jury returned a superseding indictment, adding cocaine and marijuana as additional substances allegedly involved in the conspiracy. Defendant

2

then renewed his motion to continue, citing the superseding indictment, and stating that the Government did not resist a continuance. Trial was then rescheduled on May 23, 2011.

On April 25, 2011, Defendant filed the instant motion to suppress. The Government filed its resistance on May 2, 2011.

### III. ISSUE PRESENTED

Defendant asks that the Government be prohibited from offering any evidence regarding the events of February 2, 2000, when Defendant allegedly sold crack cocaine to a confidential informant.

### IV. RELEVANT FACTS

On February 2, 2000, a confidential informant ("CI") advised law enforcement authorities that he had arranged to purchase crack cocaine from Milo Davis (the Defendant). According to a report prepared by DEA Task Force Officer R. Scott Elam, the CI stated that he "had made the arrangements to purchase the crack cocaine through Chuck LNU."[1] DEA Special Agent Chris York testified that after "debriefing" the CI, officers established surveillance in the parking lot of the Goodwill Store, where the transaction was to occur.

According to Officer Elam's report, "Chuck" called the CI at about 2:17 p.m. and advised him "that Chuck LNU and Milo Davis were enroute to the Goodwill Store." A few minutes later, the CI was searched, given $350 to purchase the drugs, and fitted with a recording device.[2] The CI then walked from a nearby trailer court to the Goodwill Store. The CI was observed getting into a Ford SUV which was occupied by a black male.[3] After allegedly purchasing crack cocaine, the CI exited the vehicle and walked

---

[1] *See* Defendant's Exhibit B.

[2] Special Agent York was not sure if the recording device was self-contained, or if it transmitted a signal which was then recorded by law enforcement. However, Officer Elam's report refers to "a covert transmitter."

[3] According to Officer Elam's report, the CI was observed getting into a white Ford
(continued...)

3

back to the trailer court. Officers then met the CI and received .78 grams of crack cocaine.

Following the transaction, the recording – which was apparently in the form of a VHS tape – was placed in the non-drug evidence vault at DEA headquarters.[4] While the task force apparently intended to continue the investigation, the CI could not be located after that time. The case remained open until September 2002, when the United States Attorneys Office declined to prosecute. According to Special Agent York, when a case is closed following a declination to prosecute, the DEA then generally destroys the evidence. According to DEA Form 48a (Government's Exhibit 1), on September 13, 2002 the recording was "destroyed (or returned to the case file)." York testified that it is "likely this was destroyed." In any event, the current whereabouts of the recording is unknown.

As set forth above, Defendant was charged by indictment on May 21, 2010 with, among other things, conspiracy to distribute crack cocaine. Apparently, the CI has been located and will testify at the trial, if permitted by the Court to do so. It was apparently discovered in February 2011 that the recording had been destroyed.[5] Defendant's former attorney, Raphael M. Scheetz, signed an affidavit indicating that "the Government"

---

[3](...continued)
*Explorer* at 2:33 p.m., and seen exiting a white Ford *Bronco* at 2:35 p.m.

[4] There is some uncertainty regarding whether the recording was audio, video, or both. Special Agent York (who was not involved in the transaction) testified that he believed an audio recording was made. Officer Elam's report states that he "activated the video/audio recording device." The report also states that the "video recording device" had been used previously "to record some unknown persons who had been observed in the area."

[5] In its brief, the Government asserts that "[i]n February 2011, the DEA case agent in this case discovered the recording of the controlled purchased [*sic*] had been destroyed." *See* Government's Brief (docket number 62-1) at 3. The testimony at the instant hearing was imprecise, however, regarding when, how, and by whom it was discovered that the recording had been destroyed.

4

informed him "that these recordings did not survive the flood of 2008."[6] The affidavit is silent, however, regarding when that representation was made or by whom.

It should also be noted that the crack cocaine which was allegedly purchased from Defendant on February 2, 2000 has also been destroyed. The drugs were sent to the Iowa Division of Criminal Investigation ("DCI") laboratory for testing.[7] Immediately prior to the hearing, Special Agent York contacted the Iowa DCI and was told that the drugs were destroyed on September 13, 2004. York was unable to testify regarding any contacts between the DEA task force and the Iowa DCI which preceded the destruction of the drugs.

### V. DISCUSSION

#### A. Is Defendant's Motion Timely?

Initially, the Court must determine whether Defendant's motion to suppress was timely filed. FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)(C) states that a motion to suppress evidence "must be raised before trial." Rule 12(c) permits the Court to set deadlines for filing pretrial motions. Rule 12(e) states that if a Rule 12(b)(3) motion is not raised by the deadline established by the Court, then it is waived. The Rule further provides, however, that "[f]or good cause, the court may grant relief from the waiver."

In the Northern District of Iowa, the deadline for filing nontrial-related motions is established by local rule and by the criminal trial scheduling order entered in each case. Local Criminal Rule 12.a provides that all motions under FEDERAL RULE OF CRIMINAL PROCEDURE 12(b) must be filed within 28 days after the date of the defendant's first

---

[6] *See* Defendant's Exhibit A.

[7] Officer Elam's report indicates on page 3 that "exhibit #1" (apparently the drugs) was placed in the vault at Cedar Rapids until February 4, 2000 – two days after the transaction – when it was mailed to the Iowa DCI laboratory. The Court notes parenthetically that pages 1 and 2 of the report (identified as "page 1 of 2" and "page 2 of 2") were prepared on February 2, 2000. The third page (identified as "page 3 of 3") was prepared on February 4, 2000. Curiously, however, the narration found on page 3 of 3 appears to be a sentence fragment which does not directly follow anything on page 2 of 2.

arraignment. Similarly, the Criminal Trial Scheduling Order entered following Defendant's arraignment in this case provided that "[a]ll motions referred to in Local Criminal Rule 12.a, including motions to suppress evidence, must be served and filed within **28 days** after the date of the first arraignment." *See* Criminal Trial Scheduling Order (docket number 12), ¶ IV(B) at 2 (emphasis in original). Here, Defendant was arraigned on October 19, 2010. Accordingly, the deadline for filing a motion to suppress was November 16, 2010. The instant motion was filed on April 25, 2011, some 160 days following the deadline.

Defendant argues that "good cause" justifies relief from the waiver provisions found in FEDERAL RULE OF CRIMINAL PROCEDURE 12(e). While Defendant's motion and brief are silent regarding the alleged "good cause," Defendant was not apparently advised that the recording was missing until February 2011, long after the deadline for filing a timely motion had expired. In arguing that the motion is not timely, the Government notes that "defendant failed to raise the issue of the destruction of the recording until approximately two months later and one month after current defense counsel entered an appearance in this case."

The Eighth Circuit Court of Appeals has made it clear that the deadline for filing a pretrial motion need not be extended, absent a showing of good cause. In *United States v. Salgado-Campos*, 442 F.3d 684 (8th Cir. 2006), the defendant appeared for arraignment on December 1, 2003, and the magistrate judge set a December 22, 2003 deadline for filing pretrial motions. The deadline expired without court-appointed counsel filing any pretrial motions. The defendant then retained private counsel, who appeared on January 25, 2004. At the request of new counsel, the trial was twice continued. On March 21, 2004, approximately three weeks prior to the trial, the defendant's counsel requested an extension of time in which to file pretrial motions. The magistrate judge denied the motion, concluding that the defendant had failed to show good cause to justify an extension, and the district court agreed. *Id.* at 686. The Eight Circuit Court of Appeals

affirmed, noting that "[s]ubstitute counsel made his request for an extension of time in which to file pretrial motions nearly three months after this deadline had expired and nearly two months after he entered his initial appearance." *Id.* The Court concluded that the defendant "fail[ed] to demonstrate that his tardiness was not due to 'negligence, oversight, or laziness.'" *Id.*

In support of his motion, Defendant cites *United States v. Chavez*, 902 F.2d 259 (4th Cir. 1990). There, just 11 days before trial, the defendant sought leave to file a motion to suppress out-of-time. The district court denied his motion two days later. On appeal, the Fourth Circuit noted that the information which was the basis of the defendant's motion to suppress was not provided to defense counsel until one day prior to the filing of the motion. The Court also noted that "the government would have suffered no prejudice had the court granted the defendant a suppression hearing before trial, especially since the government prepared a lengthy response to [the defendant's] motion and argued the merits of the suppression issue before the district court." *Id.* at 264. The appeals court concluded that the district court's denial of the request to file a motion to suppress out-of-time "constitutes a clear abuse of discretion." *Id.* (The Court further concluded, however, that the motion to suppress was without merit.)

The Court now turns to the facts in the instant action. At some undisclosed time, Mr. Scheetz "sought video recordings of controlled buys alleged by the Government to contain participation by the above captioned defendant."[8] At some undisclosed time, Mr. Scheetz was informed that "these recordings did not survive the flood of 2008."[9] On an undisclosed date in February 2011, it was apparently discovered by a DEA agent that the recording had been destroyed. The record does not reflect when that information was provided to Defendant's counsel. According to its brief, "[t]he government acknowledges that the information regarding the destruction of the recording was not placed in the

---

[8] *See* Defendant's Exhibit A.

[9] *Id.*

7

discovery file until February 2011."[10] Comments made by Defendant's counsel at the time of hearing suggest that the "packet about the destruction of evidence" was placed in the discovery file around February 11, 2011.

While the circumstances in this case would justify an extension of the original deadline for filing a motion to suppress, the Court believes that any such extension would have expired not later than mid-March 2011. That is, it is the Court's understanding that the true facts relating to the apparent destruction of the recording were placed in the discovery file by mid-February. The Court believes that any motion to suppress based on those facts should have been brought within the next 28 days. Defendant's brief does not articulate "good cause" for a delay in filing the motion to April 25, 2011. Defendant's present counsel did not appear until March 29, 2011. However, the retention of new counsel is not sufficient to establish good cause to justify relief from the waiver provisions of Rule 12(e). *See United States v. Trancheff*, 633 F.3d 696, 698 (8th Cir. 2011).

Accordingly, I believe that by failing to timely file his motion to suppress, Defendant waived those issues raised in the instant motion. *See* FED. R. CRIM. P. 12(e). Therefore, I recommend that the motion to suppress be denied.[11]

---

[10] *See* Government's Brief (docket number 62-1) at 4.

[11] As noted at the time of hearing, it is unclear to the Court whether the issue could have been raised in a motion *in limine*. Broadly speaking, a motion *in limine* refers to any motion intended to exclude anticipated prejudicial evidence. *Luce v. United States*, 469 U.S. 38, 40 (1984) ("We use the term in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."). In the Court's experience, motions to suppress are generally used to challenge the admissibility of evidence which was allegedly unlawfully obtained. Motions *in limine*, on the other hand, generally seek to prohibit the introduction lawfully obtained evidence for other reasons. *See, e.g., United States v. Crippen*, 627 F.3d 1056 (8th Cir. 2010) (a motion to suppress used to challenge evidence obtained from an allegedly invalid pat-down search, with a motion *in limine* used to challenge the admissibility of pseudoephedrine logs obtained by subpoena); *United States v. Quiroga*, 554 F.3d 1150 (8th Cir. 2009) (a motion to suppress used to challenge evidence obtained
(continued...)

## B. Does Destruction of the Recording Constitute a "Due Process Violation" Requiring Suppression of the Evidence?

As set forth above, I believe that Defendant's motion was not timely filed and, therefore, the issues raised therein are waived. In the event the district court disagrees with my analysis in that regard, however, the Court will also address the substantive claim made in Defendant's motion.

This issue is properly analyzed pursuant to the Court's rulings in *California v. Trombetta*, 467 U.S. 479 (1984), and *Arizona v. Youngblood*, 488 U.S. 51 (1988). In *Trombetta*, the Court noted that due process requires the government "to disclose to

---

[11](...continued)
on defendant's person after he was allegedly arrested without probable cause, with a motion *in limine* used to challenge the admissibility of evidence regarding the defendant's initial plea agreement, after he withdrew his guilty plea); and *United States v. Lewis*, 483 F.3d 871 (8th Cir. 2007) (a motion to suppress used to assert that a buccal swab was obtained from the defendant in violation of his Sixth Amendment right to counsel, while a motion *in limine* was used to challenge the admissibility of evidence regarding defendant's prior convictions).

In some cases, the Court has appeared to use the terms interchangeably. *See United States v. Neumann*, 867 F.2d 1102, 1105 (8th Cir. 1989) ("Neumann objected to the search and seizure of his pickup and camper by way of a pretrial motion in limine. At the pretrial suppression hearing, Neumann's attorney based his motion to suppress on the grounds that the warrant on its face failed to establish probable cause."). On other occasions, however, the Court has apparently drawn a distinction between the two motions. *See United States v. Mangine*, 302 F.3d 819, 822 (8th Cir. 2002) ("Mr. Mangine appears to have disguised a late motion to suppress evidence (Mr. Mangine's oral statement) as a motion in limine.").

The deadline for filing motions *in limine* is arguably not until next Monday, May 9. *See* Criminal Trial Scheduling Order (docket number 12), ¶ IV(A) at 2 ("All trial-related motions, including motions in limine, must be served and filed as soon as practicable, but at least **14 days** before the commencement of trial.") (emphasis in original). The Court makes no judgment regarding whether the motion was filed "as soon as practicable." In any event, this issue was not raised or briefed by the parties and, therefore, the Court will not address it.

9

criminal defendants favorable evidence that is material either to guilt or to punishment," citing *Brady v. Maryland*, 373 U.S. 83 (1963), and addressed the additional question of whether due process "also demands that the State preserve potentially exculpatory evidence on behalf of defendants." 467 U.S. at 481. While due process requires that criminal prosecutions "comport with prevailing notions of fundamental fairness," the Court concluded in *Trombetta* that the failure to retain breath samples was not violative of the United States Constitution. *Id.* at 485.

In *Youngblood*, the Court granted *certiorari* "to consider the extent to which the Due Process Clause of the Fourteenth Amendment requires the State to preserve evidentiary material that might be useful to a criminal defendant." 488 U.S. at 52. There, a 10-year-old boy was sexually assaulted and certain evidence was gathered following the incident. The defendant was arrested approximately five weeks later and charged with the crime. The defendant's principal defense at trial was that the victim had misidentified him as the perpetrator. A jury found the defendant guilty as charged, but the Arizona Court of Appeals reversed the conviction, finding that "when identity is an issue at trial and the police permit the destruction of evidence that could eliminate the defendant as the perpetrator, such loss is material to the defense and is a denial of due process." *Id.* at 54. The United States Supreme Court reversed.

In reversing, the Court first noted that the State complied with the disclosure requirements of *Brady*. Accordingly, for the defendant "to prevail on federal constitutional grounds, then, it must be because of some constitutional duty over and above that imposed by cases such as *Brady* and *Agurs*." *Id.* at 56 (referring to *United States v. Agurs*, 427 U.S. 97 (1976)). The Court noted that its prior decisions "have stressed the importance for constitutional purposes of good or bad faith on the part of the Government when the claim is based on loss of evidence attributable to the Government." *Id.* at 57. The Court reaffirmed its "unwillingness to read the 'fundamental fairness' requirement of the due process clause as imposing on the police an undifferentiated and absolute duty to

retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id.* at 58 (citation omitted).

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. **We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.**

*Id.* (emphasis added).

Turning to the facts in the instant action, there is no evidence of bad faith by law enforcement in destroying either the recording or the drugs. Because the CI could not be found, the United States Attorneys Office decided not to pursue any prosecution. Accordingly, pursuant to their general practice, the DEA destroyed the recording. At the time the recording was destroyed, the DEA believed that it proved Defendant unlawfully sold crack cocaine to the CI. Similarly, the drugs were apparently destroyed by the Iowa DCI after it learned that the investigation had been closed. There is no evidence that the DCI acted in bad faith.

Defendant argues that the recording may have shown that the "black male" in the Ford SUV was someone else. According to Officer Elam's report, the transaction had been arranged by "Chuck LNU." "Chuck" called the CI and said that he and Defendant were on their way. The report further states that "Chuck" is the boyfriend of Tanaka Pearson. The license plate on the Ford SUV was registered to Tanaka Pearson and George Morgan.[12] It should also be noted that the license plates "were supposed to be on a Black

---

[12] The report describes George Morgan as a black male born in 1922. Morgan would have been 77 years old at the time of this transaction. "Chuck" is not described in the report.

1996 Chevy Corsica Four door automobile." The Court in *Youngblood* made it clear, however, that the "possibility that [the evidence] could have exculpated" the defendant "is not enough to satisfy the standard of constitutional materiality in *Trombetta*." 488 U.S. at 56, n.[]. Moreover, the Court "made clear in *Trombetta* that the exculpatory value of the evidence must be apparent '*before* the evidence was destroyed.'" *Id*.

I believe that this case falls squarely within the holding of *Youngblood*. Because Defendant cannot show bad faith on the part of the police, the failure to preserve potentially useful evidence does not constitute a denial of due process. 488 U.S. at 58. The Court notes parenthetically that Defendant can elicit testimony regarding the destruction of the evidence and, presumably, argue that the recording may have established that he did not participate in the transaction on February 2, 2000. *See United States v. Webster*, 625 F.3d 439, 448 (8th Cir. 2010) ("Webster was free at trial to cross-examine the government's witnesses to that effect, calling into play the government's conduct in destroying the evidence.").

## VI. SUMMARY

In summary, I believe that Defendant's motion to suppress was not timely filed, and Defendant has failed to show good cause why the waiver provisions of FEDERAL RULE OF CIVIL PROCEDURE 12(e) should not apply. Accordingly, the motion should be denied for that reason. Even if the motion is considered on its merits, however, it should be denied. Since Defendant cannot show bad faith by the DEA or DCI in destroying the evidence, the failure to preserve the potentially useful evidence does not constitute a denial of due process of law. *Youngblood*, 488 U.S. at 58.

## VII. RECOMMENDATION

For the reasons set forth above, it is respectfully recommended that Defendant's Motion to Suppress (docket number 55) be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party

may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on May 3, 2011.*

DATED this 4th day of May, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA