# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 10-CR-41-LRR |
| vs. | **ORDER** |
| MILO VAREEN DAVIS, | |
| Defendant. | |

_____

## *I. INTRODUCTION*

The matter before the court is Defendant Milo Vareen Davis's "Motion for Judgment of Acquittal and a New Trial" ("Motion") (docket no. 110).

## *II. RELEVANT PROCEDURAL BACKGROUND*

On May 3, 2011, a grand jury returned a two-count Second Superseding Indictment (docket no. 67) against Defendant. Count 1 charged Defendant with Conspiracy to Distribute Marijuana, Cocaine and Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 851. Count 2 charged Defendant with Money Laundering, in violation of 18 U.S.C. § 1956.

From May 23 to May 26, 2011, the court held a jury trial. Assistant United States Attorney Patrick Reinert and Special Assistant United States Attorney Anthony Morfitt represented the government. Attorneys Clemens Erdahl and David Cmelik represented Defendant. On May 26, 2011, the jury returned verdicts of guilty on both counts of the Second Superseding Indictment. With respect to Count 1, the jury found two objects of the conspiracy: (1) to distribute some quantity of cocaine base and (2) to distribute some quantity of a mixture or substance containing a detectable amount of cocaine. The jury also found that the conspiracy involved fifty or more grams of cocaine base and five hundred or more grams of a mixture or substance containing a detectable amount of cocaine.

On June 9, 2011, Defendant filed the Motion. On June 15, 2011, the government filed a Resistance (docket no. 113).

## III. FACTS[1]

At trial, the government presented the testimony of seventeen witnesses who detailed their personal knowledge of Defendant's drug dealing activity. One witness testified regarding his personal knowledge of Defendant's drug trafficking activity in the Cedar Rapids area beginning as early as 1997 and ending at some point in 2005. Specifically, he testified that he observed Defendant sell multiple 3.5 gram quantities ("8-balls") of crack cocaine in 1997, that he bought kilogram quantities of cocaine with Defendant from a supplier in Chicago and that he personally bought sixty-three gram quantities ("Halsteds") of crack cocaine from Defendant once or twice a month from 2002 to 2005. The sixteen other witnesses testified similarly. Many of the witnesses testified that they regularly bought cocaine or crack cocaine from Defendant from the late 90s to mid-2000s and stopped only during periods of incarceration.

John Dunigan, a car salesman, testified that in July of 2005, Defendant and his father came to the car dealership where he worked. Defendant and his father offered to purchase an Infiniti SUV. Jennifer Wilson, Defendant's girlfriend at the time, testified that she ultimately purchased the vehicle by making a down payment of $9,100. She did not have the full amount in her bank account, so Defendant made a series of deposits into her account prior to making the down payment.

## IV. ANALYSIS

Defendant moves for a judgment of acquittal and for a new trial based upon insufficiency of the evidence. With respect to the Motion for Judgment of Acquittal, Defendant faces a heavy burden. It is well-settled that jury verdicts are not lightly overturned. *See, e.g., United States v. Peneaux*, 432 F.3d 882, 889 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the

---

[1] The court sets forth additional facts in its legal analysis.

evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *Id.* Moreover, the court "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to evaluate the credibility of witnesses. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). That task is for the jury. *Id.*

With respect to the Motion for New Trial, Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if justice so requires." Fed. R. Crim. P. 33(a). A district court is granted broad discretion in considering a motion for a new trial. *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Id.* (citation omitted). However, the court "should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *Peters,* 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).

A district court enjoys more latitude in granting new trials under Rule 33 than in granting motions for judgment of acquittal under Rule 29; however, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d at 579. District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

In addition to Defendant's arguments regarding insufficiency of the evidence, he asserts that a number of errors require a new trial. First, Defendant claims that the government unlawfully delayed in indicting him. Second, he asserts that a "fatal variance

3

resulted in unfair prejudice." Motion at 1. Third, Defendant argues that "juror bias denied [him] due process and a fair trial." *Id.* Fourth, he claims that the "verdict forms misstated [the] crack quantity element." *Id.* Last, he argues that "evidence destruction denied [Defendant] due process." *Id.* The court considers these claims, in turn.

### *A. Sufficiency of the Evidence*

Viewing the evidence in the light most favorable to the verdict, the court denies the Motion to the extent it asks for a judgment of acquittal based upon insufficient evidence. The court need not recount all of the government's evidence here. In short, the government presented seventeen witnesses who testified about Defendant's drug-related activities. Many of these witnesses stated they bought crack cocaine from Defendant on dozens of occasions. Affording all reasonable inferences to the government, the court finds the evidence on Count 1 sufficient to sustain the verdict.

With respect to Count 2, the government presented evidence that Defendant and his father went to a car dealership in Hiawatha, Iowa, and purchased a 2004 Infiniti SUV. The purchase agreement indicated that Defendant and his father were the purchasers of the vehicle. The next day, Defendant's girlfriend completed a purchase agreement in her name for the same SUV. She used a cashier's check from her bank account to make a $9,100 down payment on the SUV. Prior to the purchase, Defendant made cash deposits into his girlfriend's account on multiple occasions. Defendant also made numerous deposits to and withdrawals from his father's bank accounts. Additionally, the government admitted evidence of Defendant's minimal legitimate income from his barbershop. The court declines to grant a judgment of acquittal on Count 2. The jury was entitled to reasonably infer that the money used to purchase the SUV was derived from Defendant's drug dealing activity, as he reported little to no legitimate income during the relevant time period.

The court also denies the Motion to the extent it asks for a new trial based upon insufficiency of the evidence. The evidence in this case did not weigh "'heavily enough

against the verdict that a miscarriage of justice may have occurred.'" *Peters,* 462 F.3d at 957.

## *B. Prosecutorial Delay*

Defendant contends he is entitled to a new trial, because the government unlawfully delayed in indicting him. Any motion alleging a defect in an indictment must be raised before trial, Fed. R. Crim. P. 12(b)(3)(B), and a failure to file such a motion results in a waiver of the claim. Fed R. Crim. P. 12(e). Because Defendant waived his claim of unreasonable prosecutorial delay, the court shall deny the Motion to the extent it seeks relief on this basis.

In any event, the court finds the contention to be without merit. Defendant bears the burden of showing that prosecutorial delay resulted in "actual prejudice" against him. *United States v. Farber*, 679 F.2d 733, 734-35 (8th Cir. 1982). "To establish actual prejudice, a defendant must identify witnesses or documents lost during the delay period." *United States v. Gladney*, 474 F.3d 1027, 1031 (8th Cir. 2007). "Where actual prejudice is established, the reasons for the delay are balanced against the prejudice shown by the accused." *Farber*, 679 F.2d at 736. The court "must be mindful that statutes of limitations . . . are the primary guarantee against bringing overly stale criminal charges." *Id*. at 735.[2]

Defendant devotes two sentences to this argument in his brief. He does not identify witnesses or documents lost during the delay or even suggest that the government had an improper motive for delaying indictment. In pre-trial motions and in the instant Motion, Defendant alleged that the destruction of a recording of a controlled buy prejudiced him.[3]

---

[2] Although Defendant mentions the statute of limitations in his brief, he does not argue that the Indictment occurred outside of the statute of limitations, rather he argues that the government failed to prove a single conspiracy. The court addresses this argument in the instant Order.

[3] United States Magistrate Judge Jon S. Scoles addressed this issue in his Report (continued…)

5

The court finds that any prejudice resulting from this destruction is "speculative at best" and that Defendant has not met his "difficult burden" to show a violation of due process. *Id.* at 734-35.

### *C. Fatal Variance*

Next, Defendant argues that the evidence showed multiple conspiracies rather than one conspiracy, as the Indictment charged. The court finds that the evidence at trial established the existence of one conspiracy, with one objective—to sell controlled substances.

"To establish the existence of a conspiracy, the government must prove that an agreement was made to do something illegal." *United States v. Hill*, 410 F.3d 468, 471 (8th Cir. 2005). In this case, the government was required to prove that Defendant and others agreed to distribute controlled substances. "It is not necessary that the participants or activities remain static throughout the duration of the conspiracy." *Id.* "[P]articipants may be uninvolved in, or even unaware of, all acts committed in furtherance of the conspiracy. The jury must simply be able to find that there was an overall agreement to pursue a common, unlawful end." *Id.* at 471-72.

The government presented evidence that Defendant sold drugs and bought drugs from a number of different people, many of whom never knew each other. This kind of conspiracy is commonly referred to as a "hub and spokes" conspiracy. *Id.* at 472. In *Hill*, the Eighth Circuit Court of Appeals found that the defendant was a member of a "single, massive conspiracy." *Id.* The Court reasoned:

> The record reveals the existence of a large, but typical, "hub and spokes" conspiracy, with Hill as a hub: he purchased drugs and drug precursors from a variety of individuals; he manufactured or processed the purchased drugs and drug

---

³(…continued)
and Recommendation (docket no. 74) regarding Defendant's Motion to Suppress (docket no. 55). The court adopted Judge Scoles's Report and Recommendation in its entirety. The court fully incorporates this analysis into the instant Order.

> precursors; and he packaged and distributed the drugs to consumers and lower-level dealers. This evidence is consistent with the finding of a single conspiracy. *United States v. Slaughter*, 128 F.3d 623, 630 (8th Cir.1997).

*Id*. These facts are nearly identical to the instant case. Viewing the evidence in the light most favorable to the verdict, the court finds that the evidence supported the existence of one conspiracy. Accordingly, the court denies the motion to the extent it asks for relief based upon a "fatal variance."

### *D. Juror Bias*

Defendant argues that a juror was biased in favor of the government, and that, as a result, the court should grant him a new trial. During the trial, a juror alerted the court that she recognized government witness Special Agent Jeff Maguire of the Internal Revenue Service and that she recognized AUSA Reinert's name. The undersigned asked the juror about her relationship with Agent Maguire and AUSA Reinert. The juror stated that her familiarity with these two individuals would not color her judgment and she could be fair and impartial to both sides of the case.

In *United States v. Dale*, 614 F.3d 942, 951 (8th Cir. 2010), a juror alerted the trial court on the second day of trial that he felt he could not be impartial. The trial judge did not excuse the juror at that time. Before deliberations began, the trial judge spoke to the juror again. The juror indicated that he thought he could be "fair to both sides" and that he had no "concern about retiring and deliberating." *Id*. On appeal, the defendant argued that the court erred by refusing to excuse the juror. The Eighth Circuit Court of Appeals disagreed, stating that "a district court does not abuse its discretion by refusing to excuse a challenged juror after the juror affirmed [her] impartiality and the judge favorably evaluated their demeanor." *Id*. at 959. The court presumes jurors' impartiality. "'[T]o fail this standard, a juror must profess [her] inability to be impartial and resist any attempt to rehabilitate [her] position.'" *Id*. (quoting *Moran v. Clarke*, 443 F.3d 646, 650-51 (8th Cir. 2006)). Here, unlike the juror in *Dale*, the juror never professed any bias

7

whatsoever. Accordingly, the court denies the Motion to the extent it asks for a new trial based on juror bias.

### *E. Drug Quantity*

Defendant argues that the court misstated the drug quantities on the interrogatory forms. The court previously addressed this issue in an Order (docket no. 31), in which it ruled that the Fair Sentencing Act does not apply to defendants whose criminal activity occurred before its enactment. Accordingly, the court denies the Motion to the extent Defendant seeks relief on this basis.

### *F. Destruction of Evidence*

Defendant argues that he was denied due process due to the destruction of evidence. Again, Judge Scoles thoroughly addressed this issue in the Report and Recommendation denying Defendant's Motion to Suppress. The court fully incorporates the Report and Recommendation's analysis here. Accordingly, the court denies the Motion to the extent it asks for relief based upon the destruction of evidence.

### *V. CONCLUSION*

In light of the foregoing, the Motion (docket no. 110) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 23rd day of June, 2011.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA